IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:25-cv-109

| | |
|---|---|
| CLEAR BLUE INSURANCE COMPANY, and CLEAR BLUE SPECIALTY INSURANCE COMPANY, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) **VERIFIED COMPLAINT** |
| v. | )<br>) |
| YACHTINSURE SERVICES, INC. | )<br>) |
| Defendant. | )<br>)<br>) |

Plaintiffs Clear Blue Insurance Company ("CBIC") and Clear Blue Specialty Insurance Company ("CBSIC") (collectively, "Clear Blue") bring this action for declaratory judgment and breach of contract and seek injunctive relief against Defendant Yachtinsure Services, Inc. ("Yachtinsure") (Yachtinsure, collectively with Clear Blue, "Parties"). Specifically, Clear Blue brings this action due to Yachtinsure's failure and refusal to: (a) defend and indemnify Clear Blue in connection with a certain Florida lawsuit; and (b) adjust all insurance claims to completion in its capacity as claim adjuster. As such, Clear Blue seeks declaratory relief, damages for multiple breaches of contract, specific performance, attorneys' fees, and preliminary and permanent injunctive relief as requested below.

## PARTIES

1. Clear Blue is a fronting specialist insurance company that offers property and casualty insurance in all 50 states in partnership with managing general agents ("MGAs"), third-party claim administrators ("TPAs"), and reinsurers. Clear Blue has an "A-" (Excellent) rating from the leading insurance rating company, AM Best.

2. Clear Blue contracts with (a) MGAs to, among other things, place and administer insurance policies and (b) TPAs to, among other things, adjust claims submitted in connection with those policies. As the fronting specialist insurance company, Clear Blue delegates underwriting, binding, and servicing authority to its MGAs. Clear Blue delegates all claim adjusting functions to its TPAs. Neither Clear Blue itself, nor its affiliated companies, employ claim adjusters and hold no licenses to perform claim adjusting activities.

3. Clear Blue entered into a General Agency Agreement with Yachtinsure, effective December 7, 2020, as subsequently amended (the "GAA"),[1] for the underwriting, binding, servicing, and adjusting claims for certain marine and boat insurance policies produced and administered under the GAA (the "Program"). A true and correct copy of the GAA is attached as **Exhibit 1** and is incorporated by reference as if fully set forth herein.

4. Pursuant to the terms of the GAA, Yachtinsure is contractually obligated to serve as both the MGA and the TPA of Clear Blue insurance policies placed, administered, and adjusted under the Program.

## JURISDICTION AND VENUE

5. Both CBIC and CBSIC are insurance companies incorporated in the state of Texas with their principal place of business in Texas. CBIC and CBSIC also have offices in Charlotte, North Carolina.

6. Yachtinsure is a corporation incorporated in the state of Florida with its principal place of business in Florida.

---

[1] The GAA's subsequent amendments do not modify, terminate, or otherwise alter the Parties' contractual duties stated herein.

7. As corporations, CBIC, CBSIC, and Yachtinsure's "citizenship" for diversity-jurisdiction purposes is determined by both their state of incorporation and state in which their principal place of business is located.

8. As a result, CBIC and CBSIC are "citizens" of Texas, and Yachtinsure is a "citizen" of Florida for diversity-jurisdiction purposes.

9. Because the Parties are completely diverse and the amount in controversy exceeds $75,000, this Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

10. Further, Defendant has regularly and intentionally conducted business in North Carolina and this District and is subject to personal jurisdiction in North Carolina and this District by virtue of its contacts here.

11. At the time Clear Blue and Yachtinsure entered into the GAA, CBSIC was a North-Carolina domiciled insurance company.

12. The GAA states that the "Agreement shall be deemed performable at [Clear Blue's] administrative office in Charlotte, North Carolina." (Ex. 1, GAA § 11.04).

13. Under the GAA, Yachtinsure is "considered a [MGA] under Illinois and North Carolina insurance codes, and thus this [GAA] is subject to those state regulations at all times." (*Id.* § 1.04).

14. The GAA additionally contains a forum-selection clause whereby Yachtinsure agreed to vest jurisdiction over disputes concerning the GAA in the federal courts in Charlotte, North Carolina. (*Id.* §§ 11.04, 12.01, 12.09). Further, the Parties agreed that "the exclusive venue and jurisdiction for any court action or other legal proceeding seeking [any preliminary or injunctive relief] will be in the federal courts located in Charlotte, North Carolina, and the Parties

3

hereby waive any defenses or objections to such venue or jurisdiction that might otherwise be available." (*Id.* § 12.09).

15. Therefore, this Court has personal jurisdiction over Defendants.

16. Venue is proper pursuant to 28 U.S.C. § 1391 because, as mentioned above, a substantial part of the events giving rise to this Verified Complaint happened in this District. Venue is also proper pursuant to the GAA forum-selection clause. (Ex. 1, GAA §§ 12.01, 12.09).

## FACTUAL ALLEGATIONS

*Yachtinsure's Claim Adjustment and Indemnification Obligations.*

17. Pursuant to the express terms of the GAA, the Parties agreed that Yachtinsure would serve as the claim adjuster ("Claim Adjuster") for all claims on policies issued under the Program ("Policies"). (*Id.* § 1.05, Ex. D).

18. Specifically, the Parties agreed that "[a]ll claims on Policies will be adjusted, administered, settled, contested, managed, resolved and otherwise handled to completion ('Adjusted'). . . by [Yachtinsure][.]" (*Id.* § 1.05). Further, Yachtinsure agreed that it "shall coordinate, cooperate and communicate in good faith with [Clear Blue] as necessary to properly Adjust all Claims and handle all claim/loss adjustment and reporting matters." (*Id.*). The GAA also requires Yachtinsure to provide "reasonable detail on claims and claim files, as required by [Clear Blue] from time to time." (*Id.* Ex. D(2)(d)).

19. Under the GAA, Yachtinsure was required to provide all claim adjusting services "in compliance with all applicable Laws." (*Id.* Ex. D). Further, in its capacity as MGA, Yachtinsure was required to "comply with all applicable federal, state and local laws and regulations related to its insurance business and the *Program*." (*Id.* § 8.06) (emphasis in original).

4

20. Under the GAA, Yachtinsure has the authority to settle each claim up to a value of $150,000 or another amount "as subsequently agreed by the Parties from time to time." (*Id.* Ex. D). The GAA provides that Yachtinsure and can seek authority to settle claims above the $150,000 default authority level from Clear Blue and that authority levels "shall be agreed upon by [Clear Blue] and [Yachtinsure] from time to time." (*Id.* § 1.05; *see also id.* Ex. D). Regardless of the claim amount, however, Yachtinsure is required to fully adjust "[a]ll claims." *Id.* 1.05.

21. Under the GAA, Yachtinsure further agreed to "indemnify, pay on behalf of and hold [Clear Blue] . . . harmless . . . including paying for all reasonable costs of defense without limitation, from and against any and all actions, causes of actions, suits, arbitrations, or proceedings of any kind, liabilities, losses, claims, demands, damages, judgments, costs, or expenses (including reasonable attorneys' fees and expenses), and any loss in excess of policy limits or extra-contractual obligations. . . arising out of or relating in any way to (i) [the GAA], or (ii) any action or inaction by [Yachtinsure] in breach of this [GAA] or not in full compliance herewith, or (iii) any action or inaction by the Claim Adjuster [Yachtinsure]." (*Id.* § 10.01).

22. Clear Blue's indemnification rights also "shall include fees and expenses (including reasonable attorneys' fees and expenses) incurred in connection with enforcing such indemnification rights." (*Id.* § 10.03).

23. The GAA provides that North Carolina law governs. (*Id.* § 12.06).

*Failure to Indemnify and Defend Clear Blue in the Florida Lawsuit*

24. As provided for in the GAA, Yachtinsure placed a Clear Blue insurance policy on a marine vessel under the Program. In March 2021, there was a fatal accident involving that vessel. The policyholder thereafter made a request for coverage, and Yachtinsure, acting in its capacity as Claim Adjuster for Clear Blue, declined coverage under the policy.

5

25. On August 22, 2024, the claimant in that claim filed an amended complaint in Florida ("Florida Amended Complaint") naming CBSIC as a defendant, styled *Karen Nissim v. Yachtinsure Services, Inc. et al*, Case No. 23-14276-CA-01 (Fla. Cir. Ct.) ("Florida Lawsuit"). A true and correct copy of the Florida Amended Complaint is attached as **Exhibit 2** and is incorporated by reference as if fully set forth herein. The claimant in the Florida Lawsuit seeks to collect on a $66,030,000 consent judgment that was entered against CBSIC's policyholder related to the fatal incident, alleging that the claim denial violated Florida's "anti-technical" statute.

26. On September 11, 2024, Clear Blue delivered a demand letter to Yachtinsure pursuant to Yachtinsure's duties under the GAA regarding the Florida Lawsuit (the "Demand Letter"). In the Demand Letter, Clear Blue formally demanded that Yachtinsure fully defend and indemnify Clear Blue, pursuant to the broad indemnification provisions under Section 10.01 of the GAA, in connection with the Florida Lawsuit. A true and correct copy of the Demand Letter dated September 11, 2024, sent by Daniel Kennedy (an Officer of Clear Blue) to Mark Birkett (Yachtinsure's CEO) and Liam Talbot (Yachtinsure underwriter) is attached as **Exhibit 3** and is incorporated by reference as if fully set forth herein.

27. At the time of the Demand Letter, Clear Blue already had begun to incur attorneys' fees and costs in defense of the Florida Lawsuit.

28. The Demand Letter noted the Parties' agreement under the GAA that Yachtinsure is required to defend and indemnify Clear Blue for defense costs and losses incurred from the Florida Lawsuit "relating in any way to" the GAA—regardless of any breach by Yachtinsure of the GAA or applicable law. (Ex. 3, Demand Letter at 2; Ex. 1, GAA § 10.01(i)).

29. Yachtinsure is also required to defend and indemnify Clear Blue for its costs and losses "arising out of or relating in any way to . . . any action or inaction" by Yachtinsure (as Claim

Adjuster) in connection with its adjustment of the claim underlying the Florida Lawsuit. (Ex. 1, GAA § 10.01(iii)).

30. Moreover, Yachtinsure is required to defend and indemnify Clear Blue for all its costs and losses incurred from the Florida Lawsuit "arising out of or relating in any way to . . . any action or inaction by [Yachtinsure] in breach of [the GAA] or not in full compliance herewith." (*Id.* § 10.01(ii)).

31. While Clear Blue vehemently opposes that it has breached any Florida law or is otherwise liable in the Florida lawsuit, if Clear Blue ultimately incurs damages in the Florida Lawsuit related to the alleged breach of Florida's "anti-technical" statute or otherwise, Yachtinsure would, in addition to the indemnity provisions previously noted, be required to indemnify Clear Blue due to Yachtinsure's breach of the GAA for failure to "comply with all applicable laws" of Florida. (*Id.* Ex. D; *see also id.* § 8.01).

32. Yachtinsure responded to Clear Blue's Demand Letter by email on September 11, 2024 ("Indemnification Rejection Email"), ignoring the plain language of the GAA and rejecting its indemnification obligations, insisting that "Clear Blue immediately rescind[] the Tender letter and demand for Defense and Indemnity." A true and correct copy of the September 11, 2024, Indemnification Rejection Email sent by Mark Birkett to Daniel Kennedy and others is attached as **Exhibit 4** and is incorporated by reference as if fully set forth herein.

33. Clear Blue has since reiterated its demand, and to date, Yachtinsure has failed to perform its duties under Section 10.01 of the GAA. Further, Yachtinsure has failed to make any payment or reimbursement to Clear Blue for damages or attorneys' fees incurred by Clear Blue in the Florida lawsuit as requested in the Demand Letter and as owed pursuant to Yachtinsure's indemnification obligations.

7

34. As a result of Yachtinsure's actions, Clear Blue is now incurring attorneys' fees and costs (i) in defense of the Florida Lawsuit, and (ii) in this dispute concerning Yachtinsure's failure to perform its contractual duty to indemnify Clear Blue.

35. Clear Blue therefore has been harmed by Yachtinsure's breach of the GAA, including without limitation by retaining independent counsel for its defense in the Florida Lawsuit, for which Clear Blue has incurred and is continuing to incur attorneys' fees and expenses. Clear Blue additionally has incurred mediation expenses and attorneys' fees to enforce its indemnification rights and shall continue incurring attorneys' fees and expenses in pursuing the instant litigation.

*Failure to Adjust Additional Claims on Policies Issued Under the Program to Completion*

36. In addition to the foregoing, Yachtinsure has refused to adjust to completion—and has otherwise stated that it will not adjust—insurance claims on Clear Blue Policies under the Program exceeding (or that may exceed) $150,000 in value, even though the GAA requires Yachtinsure to do so. In its refusal to fully adjust claims to completion, Yachtinsure is likely irreparably harming Clear Blue and its policyholders, including actively jeopardizing the proper adjustment, administration, and timely payment of insurance claims under the Program—critical functions to the operation of insurance for both the policyholders, the general public, and those in the insurance industry charged with its orderly operation.

37. Specifically, on October 17, 2024, Clear Blue emailed Yachtinsure, requesting its recommendation concerning settlement of a then-pending claim under the Program ("Claim").

38. Ray Watson (Yachtinsure Underwriter) responded by email to Zachary Holton (Clear Blue Senior Claims Specialist), copying Liam Talbot (Yachtinsure) and others that same day ("Adjustment Refusal Email"). On behalf of Yachtinsure, Watson asserted that "[a]s with all claims above and therefore outside of our contractual claim's authority limit, Yachtinsure is not

and cannot make any recommendations[]" and that Yachtinsure "merely act[s] as a conduit between Clear Blue as the carrier and appointed legal counsel[]" such that "[a]ll claims and coverage recommendations are that of legal counsel and not Yachtinsure."[2]

39. In short, Yachtinsure refused to adjust the Claim—and any further claims over $150,000—to completion. Yachtinsure also refused to cooperate with Clear Blue to fully adjust all claims to completion. Instead of seeking Clear Blue's authority to settle the Claim over $150,000—as explicitly instructed by the GAA, and as it had done in the past on numerous other claims—Yachtinsure abandoned its contractual obligations and shirked its essential duties as Claim Adjuster under the GAA.

40. Yachtinsure's current position (as stated in its Adjustment Refusal Email) is that it assumes no responsibility for any of its TPA functions as Claim Adjuster if a claim exceeds, or may exceed, $150,000. That position will likely cause immediate, irreparable harm to Clear Blue and Clear Blue's policyholders who are entitled to a timely claims process.

41. Yachtinsure's obligations as Claim Adjuster are not eliminated or abrogated merely because the value of a claim may or does exceed $150,000, nor does such a claim shift claim adjusting responsibility to Clear Blue. Rather, the GAA merely requires that Clear Blue provide authority for settlement of any claim with a settlement recommendation from Yachtinsure above $150,000. (*See* Ex. 1, GAA § 1.05).

42. Further, regardless of the claim amount, the GAA states that **"*[a]ll claims* on Policies will be adjusted, administered, settled, contested, managed, resolved and otherwise *handled to completion* ('Adjusted') by [Yachtinsure]."** (*Id.* § 1.05) (emphasis added). The GAA

---

[2] Clear Blue did not attach a copy of the full quoted correspondence between Clear Blue and Yachtinsure as an exhibit because it contains privileged communications and confidential policyholder information that is not relevant to this litigation.

further provides that Yachtinsure is "authorized and instructed" to adjust all claims "*through full completion/closing/settlement of All Claim[s] (life of claim)."* (*Id.* Ex. D) (emphasis added).

43. Indeed, Yachtinsure is well-aware of its obligations as Claim Adjuster for claims above the $150,000 policy limit. For example, on at least three occasions between 2023 and 2024, Yachtinsure requested authority from Clear Blue to adjust or settle claims for amounts exceeding the $150,000 authority level.

44. Since receiving the Adjustment Refusal Email, Clear Blue has demanded that Yachtinsure "fully adjust *all* claims" to completion, as required under the GAA. Clear Blue made clear that it is not the Claim Adjuster of the Claim and will not instruct Yachtinsure or defense counsel on how to adjust the claim beyond the Parties' respective duties under the GAA. Clear Blue also made clear via a formal notice letter dated January 13, 2025, from Bakari Watkins (Clear Blue SVP & Head of Claims) to Mark Birkett (Yachtinsure CEO), Liam Talbot (Yachtinsure Underwriter), and the Yachtinsure claims department, that Yachtinsure's failure to adjust all claims to completion was a "material breach" of the GAA. Watkins further wrote that Yachtinsure's failure to rectify the breach would lead to Clear Blue seeking "injunctive relief" against Yachtinsure in court. In that same letter, Watkins also instructed Yachtinsure to provide a spreadsheet with "all pending/open claims" within two weeks—*i.e.*, by January 27, 2025—pursuant to Yachtinsure's duty to provide "reasonable detail on claims and claim files, as required by [Clear Blue] from time to time." (Ex. 1, GAA Ex. D(2)(d)).

45. To date, Yachtinsure has failed to accept its responsibility to adjust claims exceeding $150,000, including making settlement recommendations, and to provide a spreadsheet of pending and open claims following Clear Blue's demands. Yachtinsure has additionally failed to cooperate with Clear Blue to properly adjust all claims to completion. Historically, Clear Blue

10

has had access to Yachtinsure's online portal pursuant to Clear Blue's inspection rights, which enabled Clear Blue to access claim-related data. (*See* Ex. 1, GAA §§ 8.02, 8.03). That access has been interrupted on multiple occasions. Only after Clear Blue was forced to reach out to Yachtinsure to demand access was access restored by Yachtinsure.

46. Yachtinsure's failure to perform its duties under the GAA will likely cause irreparable harm to Clear Blue's policyholders, third-party claimants, and ultimately Clear Blue.

47. Many Program claims involve catastrophic boating accidents, including severe injury and death. As a result of Yachtinsure's refusal to fully adjust to completion claims that exceed, or may exceed, $150,000 in value, Program policyholders and third-party claimants could be denied claim adjustment services and timely payment of valid claims. These Clear Blue policyholders and third-party claimants rely on timely payment of valid claims.

48. Yachtinsure's refusal to fully adjust to completion claims that exceed, or may exceed, $150,000 in value could expose Clear Blue to additional potential liability and/or penalties for violation of statutory or regulatory requirements. Clear Blue is primarily regulated by the Texas Department of Insurance, which may impose fines and penalties on Clear Blue or even revoke Clear Blue's insurance license in Texas if Clear Blue's policyholder claims are not properly adjusted. Yachtinsure's refusal to fully adjust all claims to completion may also expose Clear Blue to bad faith claims in certain jurisdictions, which could carry significant monetary ramifications.

49. Proper adjustment and settlement of claims and defense of policyholders further is critical to Clear Blue's business and reputation, including its standing with the states in which its policies are in place and those states' respective insurance laws and regulations.

50. Further, Clear Blue cannot step into Yachtinsure's shoes and adjust claims in its stead. As Yachtinsure is well-aware, claim adjustment must be performed in compliance with all

applicable laws, including claim adjuster licensure laws in the relevant jurisdictions. Clear Blue does not employ licensed claim adjusters because Clear Blue depends on its TPAs to perform such services. To date, Yachtinsure has failed to rectify its breach, and despite multiple opportunities to do so, has refused to reverse its October 2024 position and confirm its contractual obligation to adjust all claims to completion. Thus, Yachtinsure's failure to perform its claim adjustment duties likely creates immediate and irreparable harm to Clear Blue and its policyholders that cannot be cured absent injunctive relief.

*Clear Blue Met its Pre-Litigation Obligations Before Proceeding with This Litigation.*

51. The GAA provides that disputes arising out of the terms of the GAA for which damages are sought must be submitted to voluntary, non-binding mediation before proceeding to litigation. (Ex. 1, GAA § 12.01).

52. Clear Blue attempted to resolve Yachtinsure's failure to indemnify Clear Blue through a mediation on November 18, 2024, but no resolution occurred despite Clear Blue's good faith efforts.

53. The GAA additionally provides that Clear Blue "may . . . seek any interim, preliminary or injunctive relief that is necessary to protect the rights or property of [Clear Blue], *prior to or during [m]ediation hereunder*." (*Id.* § 12.09) (emphasis added).

54. Consequently, Clear Blue's claim for injunctive relief related to Yachtinsure's failure to adjust claims to completion would not be subject to the mediation requirement.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment – Indemnification Obligations)**

55. Clear Blue repeats and realleges Paragraphs 1 through 54 above, which are incorporated by reference herein.

12

56. Clear Blue and Yachtinsure are Parties to the GAA, which is a valid and enforceable contract.

57. A current and actual controversy exists between the Parties concerning Section 10.01 of the GAA regarding defense and indemnification, and there is a current need for the Court to declare the rights and obligations of the Parties under the GAA.

58. Clear Blue seeks a judgment determining the Parties' rights and obligations under the GAA—specifically, a declaration that Yachtinsure must indemnify and timely reimburse Clear Blue for any and all losses, damages, costs, fees, or expenses, including reasonable attorneys' fees and expenses, incurred or to-be-incurred in connection with the Florida Lawsuit and this current litigation.

59. As stated above, the Court has subject matter jurisdiction over the Parties, as the Parties are completely diverse and the amount in controversy exceeds $75,000.

60. A declaratory judgment will serve a useful purpose in clarifying and settling Yachtinsure's indemnification obligations presently and going forward as litigation defense and attorneys' fees and expenses continue to accumulate in the Florida Lawsuit, and it will afford the Parties relief from uncertainty.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract – Failure to Indemnify)

61. Clear Blue repeats and realleges Paragraphs 1 through 60 above, which are incorporated by reference herein.

62. Clear Blue and Yachtinsure are Parties to the GAA, which is a valid and enforceable contract.

63. Clear Blue has at all times performed its obligations under the GAA and reasonably expected Yachtinsure to fulfill its obligations under the GAA, which Yachtinsure failed to do.

13

64. As previously above, Yachtinsure materially breached Section 10.01 of the GAA by, without limitation:

    a. failing to defend, indemnify, and reimburse Clear Blue for any and all costs, damages, and expenses relating to the Florida Lawsuit, arising out of or relating to: (i) "the [GAA]," (ii) "action or inaction by [Yachtinsure] in breach of the [GAA] or not in full compliance herewith," and/or (iii) "any action or inaction by [Yachtinsure in its capacity as] Claim Adjuster," and/or

    b. repudiating Yachtinsure's indemnification obligations through its clear, unequivocal, and absolute refusal to indemnify Clear Blue following Clear Blue's correspondence dated September 11, 2024.

65. As a result of Yachtinsure's breaches, Clear Blue has been damaged in an amount to be proven at trial, which includes without limitation:

    a. Clear Blue's incurred and to-be-incurred attorneys' fees, costs, and expenses in defending the Florida Lawsuit; and

    b. Clear Blue's incurred and to-be-incurred attorneys' fees, costs, and expenses in conducting the mediation involving Yachtinsure and in pursuing this litigation against Yachtinsure.

66. As a result of Yachtinsure's breach, Clear Blue is entitled to specific performance of the GAA and damages in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
### (Declaratory Judgment – Adjustment Obligations)

67. Clear Blue repeats and realleges Paragraphs 1 through 66 above, which are incorporated by reference herein.

68. Clear Blue and Yachtinsure are Parties to the GAA, which is a valid and enforceable contract.

69. A current and actual controversy exists between the Parties concerning Section 1.05 and Exhibit D of the GAA regarding Yachtinsure's duties as Claim Adjuster, and there is a current need for the Court to declare the rights and obligations of the Parties under the GAA.

70. Clear Blue seeks a judgment determining the Parties' rights and obligations under the GAA—specifically, a declaration that Yachtinsure must fully adjust to completion all claims, including claims exceeding $150,000 in value.

71. As stated above, the Court has subject matter jurisdiction over the Parties, as the Parties are completely diverse and the amount in controversy exceeds $75,000.

72. A declaratory judgment will serve the urgent need for clarification concerning Yachtinsure's obligations as Claim Adjuster presently and going forward, as policyholders will continue to submit claims that require timely adjustment, and it will afford the Parties relief from uncertainty.

**FOURTH CLAIM FOR RELIEF**
**(Breach of Contract – Failure to Adjust Claims)**

73. Clear Blue repeats and realleges Paragraphs 1 through 72 above, which are incorporated by reference herein.

74. Clear Blue and Yachtinsure are Parties to the GAA, which is a valid and enforceable contract.

75. Clear Blue has at all times performed its obligations under the GAA and reasonably expected Yachtinsure to fulfill its obligations under the GAA.

76. As previously stated above, Yachtinsure materially breached Section 1.05 and Exhibit D to the GAA by, without limitation:

    a. failing to timely adjust all claims on insurance policies issued under the Program through full completion, closing, or settlement of each claim;

15

Case 3:25-cv-00109-MOC-DCK    Document 1    Filed 02/12/25    Page 15 of 19

b. repudiating Yachtinsure's claim adjustment obligations through its clear, unequivocal, and absolute refusal to perform its claim adjustment duties under the GAA in its communications on October 21, 2024, and since;

c. failing to cooperate with Clear Blue to properly adjust all claims to completion; and/or

d. failing to provide reasonable detail on claims that Yachtinsure is handling.

77. As a result of Yachtinsure's breach, Clear Blue, its policyholders, and claimants will likely suffer irreparable harm, including without limitation:

   a. Denial of claim adjustment and timely payment of insurance claims to policyholders and third-party claimants;

   b. Potential liability and/or penalties for violation of statutory regulatory requirements; and

   c. Damage to Clear Blue's business reputation and standing in the states in which its policies are placed;

78. As a result of Yachtinsure's breach, Clear Blue is entitled to specific performance of the GAA and damages in an amount to be proven at trial.

WHEREFORE, Clear Blue respectfully prays the Court for the following:

1. That the Court treat this Verified Complaint and the Exhibits attached to it as an Affidavit in support of Clear Blue's Motion for a Preliminary Injunction;

2. That the Court enter a Preliminary Injunction against Defendant Yachtinsure, including any person or entity acting on behalf of or in concert with Yachtinsure:

   a. Requiring Yachtinsure to fully and timely adjust all claims on insurance Policies issued under the Program, including without limitation seeking authority to adjust claims exceeding $150,000; and

16

        b.        Requiring Yachtinsure to timely provide settlement recommendations on any claims on insurance Policies issued under the Program contemplating settlement;

3.        That the Court enter a Permanent Injunction against Defendant Yachtinsure, including any person or entity acting on behalf of or in concert with Defendant Yachtinsure, ordering the same relief requested above on a permanent basis;

4.        That the Court enter a judgment against Yachtinsure for actual damages, attorneys' fees, costs, pre-judgment interest as allowed by law, and post-judgment interest as allowed by law;

5.        That the Court enter a judgment ordering specific performance against Yachtinsure, requiring it to comply with the indemnification and claim adjustment provisions of the GAA;

6.        That the Court enter a judgment declaring all rights and obligations between and among the Parties as requested above, and as may be just and necessary to resolve all matters in dispute between the Parties; and

7.        That the Court award Clear Blue any such other and further relief as the Court may deem just and proper.

Dated this 12th day of February, 2025			Respectfully submitted,


				By:	*/s/ Mark A. Nebrig*
					Mark A. Nebrig, N.C. State Bar 28710
					Fielding E. Huseth, N.C. State Bar 53121
					Raquel Macgregor Pearkes, N.C. State Bar 54905
					Sofie T. Oldroyd, N.C. State Bar 61041
					MOORE & VAN ALLEN PLLC
					100 N. Tryon Street, Suite 4700
					Charlotte, NC 28202
					Telephone: (704) 331-1000
					Facsimile: (704) 331-1159
					marknebrig@mvalaw.com
					fieldinghuseth@mvalaw.com
					raquelpearkes@mvalaw.com
					sofieoldroyd@mvalaw.com

					*Attorneys for Plaintiffs Clear Blue Insurance Company and Clear Blue Specialty Insurance Company*

18

# VERIFICATION

I, Daniel Kennedy, pursuant to the requirements of 28 U.S.C. § 1746, being first duly sworn, depose and say that I am a duly authorized representative of Plaintiffs Clear Blue Insurance Company and Clear Blue Specialty Insurance Company, that I have read the foregoing Verified Complaint and know the contents thereof, and hereby verify that the factual allegations contained therein are true and correct to the best of my knowledge, except as to those matters and things alleged upon information and belief, and, as to those things, I believe them to be true.

Executed this the 11th day of February, 2025.

*Daniel Kennedy*
Chief Legal Officer, Corporate Secretary,
Executive Vice President
Clear Blue Insurance Company and Clear Blue Specialty Insurance Company

Christopher De Nittis
NOTARY PUBLIC
Mecklenburg County
North Carolina
My Commission Expires 10/1/2025

Signed and sworn to before me this 11th day of February, 2025.

Notary Public
My commission expires: 10/1/2025